JAMES KOUSOUROS
*ATTORNEY AT LAW*

~

260 Madison Avenue, 22nd floor • New York, NY 10016
212•532•1934 / 212•532•1939 fax
E-mail: James@kousouroslaw.com

JAMES KOUSOUROS
FOUNDER & PRINCIPAL

EMMA J. COLE
LEGAL ASSISTANT

January 26, 2021

<u>Via ECF</u>
Hon. Paul E. Davison
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   Re: <u>United States v. Caswell Senior</u>, a/k/a "Casanova"
     **20 Cr. 626 (PMH)**

Dear Judge Davison:

   This letter is respectfully submitted in response to the Government's opposition to our request that a bond be set in this case for Mr. Senior.[1] Contrary to the Government's assertions, we submit that the defense has adequately satisfied its "limited burden of production" to rebut the statutory presumption in this case (<u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001)). As such, the presumption remains a "factor to be considered" by the Court and the Government "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community" (*See*, <u>United States v. Rodriguez</u>, 950 F.2d, 85, 88 (2d Cir. 1991)). The Government has failed to satisfy its burden and Mr. Senior should be released on the bond proposed or one which this Court deems appropriate under the circumstances.

   At the outset, the Government claims that we have offered "little to assure the safety of the community apart from the wholly unrealistic denials of the very serious charges" in this case (*See*, Government Opposition, Docket Entry 79, Page 1). We respectfully disagree. We have, both in our initial presentation and below, addressed the Government's evidence and we have offered a $2,500,000.00 bond secured by properties and thirteen gainfully employed suretors along with the strictest of pre-trial conditions. There is nothing unrealistic about the presumption of innocence and a defendant denying that he is involved in a charged enterprise and its alleged attendant dangerousness. There has been little to no discovery provided to support these charges and the evidence chosen by the Government in support of detention does not satisfy the standard of clear and convincing evidence of danger.

   The Government has charged Mr. Senior with conspiracies spanning ten years without providing any evidence as to what he did other than produce rap lyrics and posts that allegedly suggest his support for individuals with whom he is charged. While the Government cites to posts

---

[1] Our initial submission and the Government's response will be provided under separate cover, as they were submitted prior to the referral to this Court.

and conversations amongst others, there is no credible support for the assertion that Mr. Senior himself has in any way posed an actual danger to the community or harmed anyone within the context of the charges that have been lodged against him.

*Danger to the Community*

In the Government's detention memorandum, it provided photographs of Mr. Senior with gorilla jewelry. These promotional photographs are not evidence of criminality. Indeed, as will be demonstrated, *infra*, Mr. Senior's persona as a rap artist is not his personal persona. The Government has also cited statements by another co-conspirator claiming that Mr. Senior asked him for protection. These are the words of another individual with nothing factual in the aftermath of the statements to indicate they were true. Mr. Senior is, as the Government asserts, a rapper of "some notoriety". That Mr. Senior would often travel with an entourage is common amongst performers, including rappers. His promotional appearances and performances are public and often videotaped. He is not seen with a firearm or being "protected" during these appearances. Indeed, the fact that a co-defendant may have said that Mr. Senior *needed* protection actually detracts from the claim that Mr. Senior posed a danger to the community.

We further expect the Government to cite the recent arrest in Florida of co-defendant Jarrett Crisler for charges of Discharge of a Firearm in Furtherance of a Crime of Violence. In this Complaint, the Government cited images from Crisler's cellphone in which he allegedly provides a "Florida Lineup" for the Gorilla Stone Gang and admits to the October 24, 2020 shooting.[2] He then attributes comments to Mr. Senior immediately prior to the shooting. In fact, Mr. Senior did not instigate or promote this shooting. As indicated in the Complaint, he was taking photographs. He was unarmed and was not charged in this Complaint.

In the Government's Opposition (p. 3), the Government again cites statements made by co-defendant Walter Luster during a visit with Dwight Reid in which Luster is overheard stating that Mr. Senior accidentally fired a weapon at a poker game and "always" had a gun on him. Again, these are not statements made by Mr. Senior or attributed to him nor are they alleged to be made in furtherance of the conspiracies charged. Significantly though, the Government has not cited any evidence to corroborate these comments notwithstanding years of investigating a relatively public figure. Moreover, while the Government asserts that Mr. Senior also visited Mr. Wolf, the Government cites no such incriminating statements made by Mr. Senior during any of these visits while the Government installed device was recording the conversations. The Government further alleges, again without citing any evidence, that Mr. Senior paid for "commercial ventures directed by Reid" (*See*, Government Opposition, p. 6) and cites a text in which Mr. Senior is informing Mr. Reid's wife that he has money for Mr. Reid. There is nothing illegal about an individual assisting an inmate or his wife in time of need. There is nothing in the text provided by the Government to suggest that this overture was in furtherance of any "commercial venture" or criminal activity. Mr. Senior's relationship with Mr. Reid was not, as the Government asserts, evidence of any criminal relationship or conspiracy and other than simply stating that it was, the Government has provided no support for this sweeping allegation.

---

[2] Mr. Senior is not listed anywhere on this or other "line-ups" reproduced by the Government.

The Government again cites Mr. Senior's pending robbery charge in New York County as an example of "how he has relied on the gang for acts of violence" and that he committed the instant offense while at liberty during the pendency of this matter. We have done more than just deny these allegations. As an initial matter, this was an incident in a diner. This was not a gang related matter and Mr. Senior did not need, request, or rely on anyone to confront a young lady half his size who was video-taping him. Mr. Senior did not assault or rob the purported victim. We attach herewith a video of the incident in which the victim is being held in a chokehold by another individual.[3] Mr. Senior is seen walking past the incident in the video. This incident is not supportive of Mr. Senior's alleged membership in this gang or evidence of danger as to Mr. Senior. As we pointed out in our initial submission, Mr. Senior was offered a misdemeanor and refused. We also point out that once Mr. Senior found out he was being sought in the case, he immediately surrendered to the authorities.

In response to our submission, the Government claims that the evidence against Mr. Senior is "robust" and repeats that Mr. Senior used his Instagram to promote the gang and without citing any evidence, states that "right up until his arrest, the defendant was in the thick of Gorilla Stone's dangerous and illicit activity" (*See*, Government Opposition, p. 2). Then, after seeking to debunk our claim that Mr. Senior is being prosecuted based on his career as a rap artist, the Government submitted a post of a weapon with the caption "Gripped Up". "Gripped Up" is a rap song that was recorded by Mr. Senior days prior to the posting. This is not a gang related post. It was a promotional post for the song. There is no evidence that this is a real weapon, Mr. Senior is not depicted in the photograph and again, it is a reference to a recently recorded rap and not to his membership in any gang or his actual possession of a weapon.

The Government further claims that Mr. Senior has detailed his violent past in public interviews in support of its claim of danger to the community. The events described in these interviews occurred over 15 years ago. They are not reflective of Caswell Senior today or during the period charged in the conspiracies in this case. We have candidly addressed Mr. Senior's past convictions. In or about 2007, Mr. Senior pled guilty to a robbery and served approximately 7 years in prison. He was released in 2013. There are no claims of criminal activity related to this or any criminal group while Mr. Senior was in prison (the first three years alleged in the Indictment). He has spent the last five years working on his rap career and, as will be demonstrated below, has publicly denounced the activity with which he is charged. While the Government cites interviews in which Mr. Senior discusses his childhood and events which predate the crimes charged, it ignores the heartfelt public interviews in which Mr. Senior denounces the gang life and his efforts to move on with his career, one of which is reproduced below.

---

[3] *See*, abc 7, Video released after rapper Casanova charged with robbery at NYC diner https://abc7ny.com/casanova-arrested-rapper-cassanova/3976601/



As opposed to the posts and historical interviews cited by the Government and statements about "being Ape", there is nothing promotional about this interview. It is a heartfelt exposition of what the Government will surely argue to the jury – that there is nothing laudable about gang life and that it will only result in prison or death. During this interview, Mr. Senior relates:

> And that's why I tell the kids and whoever I run across, just be yourself….You don't get paid for being gangsta. You can't get paid. The only payment you getting is death or jail. Guaranteed. There's no gangstas getting rich and chubby, move to Miami. You don't go to heaven. That's a lie. It don't matter what the preacher says when you getting buried, oh he was a good man, they shot him for no reason, you're going to hell. You're doomed. You're  doomed two times. You're finished.

He later discusses his distant past, upon which the Government relies so strongly:

> They don't tell you, they don't tell you what comes with being tough or being a gangsta. They don't tell you you lose your family. You lose your kids. People lose you. Out of they memory bank. Out of sight out of mind. You know, family members die. Your all alone. They don't tell you that. They tell you, um, to put the work in, and this is what we doing, this is dope, cause…When I was a little kid, and I first started going…

This interview *denouncing gang life* is clearly not intended to ingratiate Mr. Senior with those disposed to such a life. This is not an interview for sale or a promotional video. It is not a rap song or performance or a photograph or an Instagram post promoting a rap song. What performers, movie producers and hip-hop artists produce is not necessarily indicative of how they personally conduct themselves. Upon his release from prison, Mr. Senior returned to his wife and his daughter with whom he has cultivated a loving relationship while pursuing his career in music.

The Government has been investigating this case for years. The Government has informed the defense that there are myriad wiretaps and other communications which were secured during this multi-year investigation. The Government wired a prison visiting room and conducted surveillance of the targeted individuals. We received notice on January 20, 2021 that the initial provision of discovery is over 4 terabytes. The Government has charged specific substantive charges against several defendants but none against Mr. Senior. There are no specific instances cited in which Mr. Senior actually possessed firearms, harmed anyone, or threatened to do so.

These are not unrealistic denials – they are fact-based responses to the Government's allegations in their detention memorandum (Docket Entry 51). These facts satisfy the defendant's limited burden as to the presumption. The Government's response to our motion, addressed below, has not demonstrated by clear and convincing evidence that Mr. Senior is a danger to the community such that conditions of release cannot be constructed. Those which we have proposed, we respectfully submit, adequately address any concerns of danger.

*Risk of Flight*

The Government's assertions concerning risk of flight, we respectfully submit, should be rejected. While the Government cites the mandatory minimum Mr. Senior faces in support of an incentive to flee, the fact is that Mr. Senior was well aware of this when he surrendered. He was well informed of the two charges for which he was indicted and the attendant statutory penalties. Notwithstanding this knowledge, he walked into the precinct voluntarily. And, as pointed out, *supra*, this is what Mr. Senior did when he learned that the police were seeking to arrest him in 2018 for a robbery in which he faced up to 25 years in prison and for which he was later offered a misdemeanor. He did not run. He voluntarily surrendered. The Government's minimization of Mr. Senior's surrender is unfortunate. We did not engage in "rounds" of negotiations. We asked for a few days for Mr. Senior to get his affairs in order. The Government insisted otherwise. Mr. Senior complied. He did not run anywhere. As the Government points out he was in Atlanta when the Indictment was unsealed. If he ran anywhere, it was to the jurisdiction in which he was indicted and to which he surrendered and not away from it. If, as the Government asserts, he would be unwilling to surrender the wealth and lifestyle he enjoyed, he would have taken his riches, of which he has none, and fled. The Government should concede Mr. Senior is not a flight risk. We respectfully submit that this Court should so find.

*Finances*

The Government asserts that Mr. Senior has not put any of his own wealth at risk and has sidestepped any financial disclosure. Regarding Mr. Senior's finances, Mr. Senior declined to provide details during the Pretrial Services interview because he did not have specific details. He will readily provide a full financial disclosure to the Court. We provide the following details here. While Mr. Senior's career began reaping financial benefits after 2016, his main source of income was from live shows, all of which were suspended during the pandemic. Mr. Senior does not own any property, stocks or bonds. Mr. Senior has bank accounts at Bank of America. There is approximately ██████ in savings and ██████ in a checking account. Mr. Senior's adjusted gross income in 2019 was ██████.

Mr. Senior signed a recording contract with Roc Nation in 2016 and received a moderate advance for future recordings. This advance has been depleted. With respect to the post from "Only Fans"[4] this post was not generated by Mr. Senior. His true earnings from April, 2020 through January, 2021 were █████████.

The fact that Mr. Senior does not have the resources to secure the substantial bond we have proposed is not a valid objection to the granting of bail. The majority of bonds the undersigned has presented in this Court have been largely secured by property and signatures of friends and family of the defendant. It is often the case that the defendant does not have the resources to support a bond. The question is whether those putting their financial future at risk – their entire financial future – know enough about a particular defendant to know that he would never leave them destitute by violating the conditions of a bond. As we have set forth in our initial presentation, thirteen co-signors have combined with the owners of five separate properties to support a $2,500,000.00 bond. These individuals are close friends and family members that are fully confident that Mr. Senior will abide by the conditions of any bond. The fact that he is not a millionaire or property owner does not detract from the commitment his friends and family are prepared to make on his behalf. Indeed,  the moral suasion from the financial ruin of so many dear friends and family members is greater than one's own financial ruin. Moreover, as amply demonstrated from Mr. Senior's prior contacts with the law, when he is sought, he voluntarily surrenders and he shows up as directed thereafter. He has conducted himself in this manner when there is no money on the line for him or his friends and family. There is no reason to believe that he will violate the conditions of the bond proposed.

Should he be released, Mr. Senior will live with his common law wife, Jasmere Corbett and their daughter at their home in Montville, New Jersey. The home is 46 miles from the White Plains courthouse. The premises are available for inspection and all the suretors are available to be interviewed by the Government all with accompanying documentation to corroborate their incomes and property ownership.

*COVID-19*

Mr. Senior is currently incarcerated at the Westchester County Jail and while the statistics at the time of the Government's submission were accurate to our knowledge, as the Government also posited, "this could certainly change" in light of the "challenges [the pandemic] poses to prison facilities" (United States v. Landji, 2020 WL 1674070, at *6 (S.D.N.Y. April 5, 2020). And indeed, the circumstances at the WCJ have changed. As of January 18, 2020, the WCJ has returned to a lockdown status in which counsel visits and video consultations have been suspended. While there is a dearth of available information for the facility, we are informed that as of January 19, 2021, three inmates and eleven staff members have the virus.[5] While unconfirmed, we have been informed that one of the medical staff at the jail recently passed away from COVID-19. For the

---

[4] OnlyFans is a website in which individuals subscribe to the service and gain access to the posts of others, mostly celebrities.

[5] *See*, Lohud, *COVID-19 cases cause Westchester County Jail unit to quarantine*, https://www.lohud.com/story/news/local/westchester/2021/01/19/covid-19-cases-cause-westchester-county-jail-unit-quarantine/4218014001/

indefinite future, contact with our client is limited to brief phone calls.[6] Mr. Senior was prescribed an inhaler upon his arrival at the WCJ. Since the lockdown was imposed he has not received a refill for the inhaler despite repeated requests.

Even without the lockdown, our ability to review discovery and prepare a defense is severely thwarted and the availability of one-hour video conferences and sporadic phone calls in no way ameliorates this. The Government's assertion to the contrary is misplaced as is the Government's suggestion that we are somehow using mitigation efforts to limit the spread of the virus to suggest that they create circumstances justifying release. The simple and undeniable fact is that incarcerated defendants cannot adequately review discovery and prepare for trial. There are terabytes of discovery in this case. There is no way to review thousands of documents and other evidence on video or on the phone for an hour at a time. These are not unlimited Zoom calls where documents can be put on a screen. Would the Government agree that it can review the discovery in this case with witnesses and its agents for the first time under such circumstances? Of course not.

We acknowledge that this pandemic has precipitated necessary measures within the prison system to ameliorate the already lethal outbreak within its walls. But to argue that this has not collided with an incarcerated inmate's constitutional rights is contrary to the reality within which we have found ourselves. It is an unfortunate consequence of the pandemic, but it is a fact this Court should not ignore in conjunction with the extant facts and circumstances detailed above. Nor are we suggesting that this warrants the wholesale release of all inmates. There are several factors of statutory and constitutional dimension to be considered in a detention analysis. Every case must be considered individually and, we respectfully submit that this is a factor that should be considered in light of the other factors delineated in 18 U.S.C. § 3142. While there is no trial date set in this case, every individual defendant who is qualified for pre-trial release must be afforded the ability to review discovery and prepare a defense and exercise his or her right to a speedy trial. If conditions can be set for the release of a defendant in order to facilitate and honor these constitutional rights, they should be set.

In this particular case, we submit that we have rebutted the presumption, the Government has not satisfied its burden and the proposed bond satisfies any concerns as to risk of flight and danger. A two and half million-dollar bond secured by properties with equity in excess of $1,000,000.00 and co-signors with yearly earnings of over $1,000,000.00 and strict pre-trial conditions is appropriate in this case.

Based upon the foregoing and our previous submission (Docket Entry 71), we respectfully submit that a bond should be set in this matter with the surrender of all travel documents and strict pre-trial conditions, including home confinement, electronic monitoring and strict pre-trial reporting.

Thank you for your courtesy and consideration.

---

[6] Prior to the lockdown, counsel and client were able to use SECURUS to schedule attorney-client video calls. Video calls are not possible during the lockdown and we have since set up a GTL account for audio calls. These are monitored calls. We are in the process of having the line designated as a privileged line and are awaiting confirmation. To be clear, as these conversations are with counsel, they should be considered privileged.

Respectfully Submitted,

_____/s/_____

James Kousouros, Esq.

c.c.

David Felton
Shiva Logarajah
Jacob Warren
*Assistant United States Attorneys*

Caswell Senior